FILED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION   2012 NOV 27  P 4: 33

JANE DOE,

           Plaintiff,

     v.

ABDELKADER AMAL, HNIA AMAL,
LAMA PROPERTY MAINTENANCE, LLC,

           Defendants.

Case No. 1:12 cv1359

**COMPLAINT**   AJT /TCB

**JURY TRIAL DEMANDED**

Jane Doe, by and for her Complaint in the above-captioned matter, alleges as follows:

### PRELIMINARY STATEMENT

1.  Plaintiff Jane Doe (hereinafter "Ms. Doe" or "Plaintiff") brings this action for damages resulting from her being trafficked into the United States from her native Morocco and subjected to coerced and uncompensated labor as a domestic servant for almost three years. Defendants Hnia Amal and Abdelkader Amal (hereinafter the "Amal Defendants") are wealthy and influential former Moroccan diplomats to the United States, with significant ties to the Moroccan military and intelligence agency. They lured Ms. Doe to the United States with false promises of reasonable and appropriate employment. Once Ms. Doe was in the United States without the protection of family and unable to communicate in English, Defendants held her in their home and forced her to work long hours without paying her the promised compensation. Defendants also subjected Ms. Doe to repeated physical, sexual, and psychological abuse. Ms. Doe is entitled to the agreed-upon and statutory minimum pay for her labor and for damages for the pain and suffering she has endured.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over the federal claims presented herein pursuant to 18 U.S.C. § 1595; 28 U.S.C. §§ 1331, 1332, 1350; and 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Ms. Doe's state law claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendants are located and reside within this district and a substantial part of the events and omissions giving rise to the claims occurred within this district.

## PARTIES

4.  Plaintiff is a 33-year-old citizen of Morocco who currently resides in the Commonwealth of Virginia.

5.  Upon information and belief, Defendant Abdelkader Amal is a resident of Virginia and a citizen of Morocco.  Defendant Abdelkader Amal is a former high-ranking official in the Moroccan army and a former Attaché (Defense Supply) at the Moroccan Embassy in the United States.  On information and belief, Mr. Amal completed his diplomatic service in 2003.

6.  Upon information and belief Defendant Hnia Amal is a resident of Virginia and a citizen of Morocco.

7.  The Amal Defendants are married and their last known address is [HOME ADDRESS REDACTED].[1]

8.  Upon information and belief, Defendant Lama Property Maintenance, L.L.C., is a cleaning company owned and operated by the Amal Defendants. Lama Property Maintenance, L.L.C., is incorporated under the laws of the Commonwealth of Virginia.  Its principal place of business is 105 N. Wash. St., Ste. 300, Alexandria, VA 22314.

---

[1] Pursuant to Local Rule 7 on personal identifiers, the Amals' home address has been redacted.

## FACTUAL ALLEGATIONS

### Ms. Doe's Employment in Morocco

9.      Ms. Doe was born and raised in Morocco.  Ms. Doe is illiterate and speaks only Arabic.

10.      Ms. Doe worked for the Amal Defendants in their home in Morocco for approximately two years.  Her duties included cooking and cleaning.  She generally worked an eight-hour day.  She had one day off per week.  She was allowed to stay home if she was ill.  The Amal Defendants regularly paid Ms. Doe an agreed-upon sum for her work.  Ms. Doe lived with her brother and went home to his house after her work day was over.

### Trafficking of Plaintiff into the United States

11.      In 2006, Defendant Hnia Amal told Ms. Doe that she wanted Ms. Doe to work for the Amals in the United States.  Ms. Amal told Ms. Doe that she would be working for the Amals in their U.S. home and in the home of the former Moroccan Consul to the United States.

12.      Defendant Hnia Amal promised Ms. Doe that she would "make a lot of money" in the U.S., and that her work duties and hours would be the same as in Morocco. Defendant Hnia Amal told Ms. Doe that she would be able to send money home to her family and return to Morocco in one year with enough money "to buy two houses."

13.      Ms. Doe had never traveled outside Morocco before and was hesitant to go to an unfamiliar country where she did not speak the language.  However, relying on Defendant Hnia Amal's assurances and promises regarding the terms and conditions of employment, Ms. Doe agreed to go to the United States.

### U.S. Visa Application and Travel to the United States

14.      Because Ms. Doe is illiterate, Defendant Hnia Amal arranged for Ms. Doe's U.S.

visa application and completed the paperwork on her behalf. Ms. Doe did not know what kind of visa was requested in the application.

15.     The visa application included a contract for U.S. employment between Ms. Doe and Hassan Khantach, the former Moroccan Consul to the U.S. The contract provided that Ms. Doe would work for Hassan Khantach for eight hours a day, five days a week with two days off each week. Ms. Doe would be paid $250 per week. She would have one week of paid sick leave annually, national and religious holidays off, and one month paid vacation leave for two years of service. She would be provided with medical and health insurance.

16.     In connection with her visa application, Ms. Doe was interviewed by an official at the United States Embassy in Morocco. The official told Ms. Doe that the wages provided in the written employment contract submitted with her application were too low to be legal in the United States. The Embassy official gave Ms. Doe a copy of the contract and told Ms. Doe that her visa could not be approved for this reason.

17.     Ms. Doe told Defendant Hnia Amal that she was denied a visa because the United States found that the amount of pay provided for in the contract was insufficient. Ms. Amal promised to correct the deficiency and told Ms. Doe that she would receive everything provided for in the updated contract. Ms. Doe understood that the revised contract provided for higher wages in compliance with U.S. laws.

18.     On information and belief, for the purpose of inducing the government of the United States to issue a visa to Ms. Doe, the Amal Defendants and Hassan Khantach represented to the American Embassy in Morocco that Ms. Doe would be compensated at a lawful rate for domestic work in the United States and that she would be provided with legally acceptable conditions of employment.

19.     Ms. Doe was granted a U.S. visa.

20.     The Amal Defendants arranged for Ms. Doe to travel with friends of theirs to the United States.

21.     Ms. Doe arrived at Dulles Airport, outside Washington, D.C., on or about December 25, 2007.

### Confiscation of Passport

22.     The Amal Defendants met Ms. Doe at the airport.   They immediately took her passport and visa.  These documents were never returned to her.

### Plaintiff's Conditions of Employment

23.     Ms. Doe began work the second day after her arrival in the United States. She was required to work long hours without regular days off until her escape nearly three years later in December 2010.

24.     Ms. Doe worked cooking and cleaning in the Amal's home, and, after the Amal Defendants' daughter had a baby in 2009, provided childcare for the Amals' grandchild.  Ms. Doe also worked for the Amals' commercial cleaning business, Defendant Lama Property Maintenance, L.L.C., cleaning several homes and offices each week.  In addition, Ms. Doe was required to clean the houses and apartments of friends of the Amals (who were not clients of Defendant Lama Property Maintenance, L.L.C.) free of charge.  Ms. Doe often worked such long hours that she did not have time to eat regular meals.

25.     Ms. Doe lived in the Amal's home and was on-call to serve her employers at all hours.

26.     Ms. Doe was subjected to harsh working conditions.  She was routinely criticized and humiliated by Defendant Abdelkader Amal.   She was also subjected to physical,

psychological, and sexual abuse.

27.    Ms. Doe was not allowed to take breaks when she requested them.

28.    Ms. Doe was not allowed to stop working when she was sick and was denied medical treatment.    At one point, Ms Doe became extremely ill after she inhaled cleaning chemicals that she had been mixing; she started coughing up blood and had trouble breathing. Ms. Doe begged to go to a doctor, but Defendant Hnia Amal refused, saying that it was too expensive.  Ms. Doe worked so hard that she had severe pain in her shoulder and back, which also went untreated.  Ms. Doe was also consistently denied medical and dental care for her recurring abdominal pains and tooth aches.  After she escaped from the Amals' home and was able to get medical care, Ms. Doe was finally diagnosed with and able to get treatment for kidney stones.

### Plaintiff Was Not Paid the Promised Wages

29.    The Amal Defendants did not give Ms. Doe the promised wages for her services.

30.    Ms. Doe was not paid the promised wages by Defendant Lama Property Maintenance, L.L.C., for her work.

31.    Upon information and belief, Defendants failed to keep hour and wage records as required by federal law.  Ms. Doe consistently worked more than 60 hours each week.

32.    Ms. Doe was not provided with the promised vacation leave.

33.    After Ms. Doe inquired several times about her wages, Defendant Hnia Amal told Ms. Doe that she would place money into a bank account for Ms. Doe for her work in the Amals' home and for her work on behalf of Defendant Lama Property Maintenance, LLC.  Ms. Amal took Ms. Doe to a bank where Ms. Doe signed paperwork.  Ms. Doe could not read the paperwork.  Ms. Doe did not have access to the bank account.or any of the money in it.  The

Amals required Ms. Doe to sign checks turning the money in the account back over to them or their friends. Ms. Doe did not receive her promised salary. The only money Ms. Doe received were occasional tips or gifts. She sent some of this money home on a few occasions to assist her family.

34.     After over two years working for the Amals and repeated inquiries about her wages, the Amals made a down payment (which was much less than they owed Ms. Doe) on an apartment in Morocco for Ms. Doe in order to further coerce and induce Ms. Doe to continue in a condition of involuntary servitude. Knowing that Ms. Doe had no ability to continue the payments on the apartment without their assistance, and that she would therefore lose her "payment" if she stopped working for them, the Amals informed Ms. Doe that she would need to continue in their employ for another three years in order to pay off the apartment. After Ms. Doe escaped from the Amals, Ms. Doe's family informed her that she had received a notice from the bank that the property was about to be foreclosed. Ms. Doe has never lived in nor seen the apartment.

## Enforced Isolation

35.     The Amal Defendants restricted Ms. Doe's contact with the outside world for the purpose of keeping her in a situation of coerced labor and involuntary servitude.

36.     Defendant Hnia Amal told Ms. Doe not to leave the home alone and not to speak to the neighbors. Ms. Doe was instructed that it was dangerous outside and warned that Americans carry guns and that she could be shot if she went outside. When Ms. Doe accompanied Defendant Hnia Amal outside the home, Defendant Hnia Amal instructed Ms. Doe not to speak to anyone.

37.     Defendant Hnia Amal told Ms. Doe that their guests were afraid of Defendant Abdelkader Amal's power and would not take any action against the Amals. For this reason, Ms. Doe was afraid to seek assistance from any guests that visited the Amal Defendants.

38.     If Ms. Doe managed to speak with someone, Defendant Hnia Amal would become very angry and bombard Ms. Doe with questions regarding what was said and why Ms. Doe was talking with the person.

39.     Defendant Abdelkader Amal made it difficult for Ms. Doe to communicate with family and friends. If they called when he was around, he would get angry and would hang up the phone while she was speaking to her family.

40.     Ms. Doe told her family that she was not being paid and that she wanted to leave. Ms. Doe's family urged her to finish out her contract, telling Ms. Doe that the Amals would eventually have to pay her and that they feared angering the Amals.

41.     Language barriers further hindered Ms. Doe's ability to seek help as Plaintiff had no way to communicate with most of the neighbors or Defendant Lama Property Maintenance, L.L.C.'s clients because she did not know how to speak English.

### Abuse of Legal Process

42.     The Amal Defendants abusively threatened Ms. Doe with legal process for the purpose of keeping her in a situation of coerced labor and involuntary servitude.

43.     Despite repeated requests from Ms. Doe for her passport, the Amal Defendants withheld her passport. When Ms. Doe asked for her passport back, Defendant Hnia Amal would become angry and threaten Ms. Doe. Ms. Doe searched the house for her passport but could not find it.

44.     Defendant Hnia Amal manipulated Ms. Doe into believing that her visa was good for three years and that she had to work for them for this entire period.

45.     The Amals led Ms. Doe to believe that, if she did not continue working in involuntary servitude, she would suffer serious legal harm.   When Ms. Doe asked for her passport back or inquired about her wages, Defendant Hnia Amal would get upset and threaten her.  Defendant Hnia Amal told Ms. Doe that if she tried to seek help from the police without proper documentation, they would send her to jail, where Ms. Doe would be physically and sexually abused.   Defendant Hnia Amal also told her that she would then be deported to Morocco naked and disgraced, with no money.  Defendant Hnia Amal repeatedly threatened Ms. Doe with deportation.

46.     Defendant Hnia Amal manipulated Ms. Doe into believing that the Amals were immune from prosecution because their names were not associated with Ms. Doe's arrival in the United States.

47.     The Amals also led Ms. Doe to believe that she could not seek redress in Morocco. Defendant Hnia Amal told Ms. Doe that Defendant Abdelkader Amal, a former member of the military, knows the head of the Intelligence Services in Morocco, and that Defendant Abdelkader Amal has the power to have people detained and harmed by the police.  Ms. Doe believed her because she heard Defendant Abdelkader Amal make phone calls to people in Morocco ordering that someone be detained and harassed at the Moroccan airport.  Defendant Abdelkader Amal told her that he knows everyone in the Moroccan courts and led her to believe that she would not be able to successfully bring a case against the Amal Defendants there.

48.     With no passport or documents, little access to money, and contact only with those who could not understand Ms. Doe or were otherwise unable or unwilling to assist her, Ms. Doe

was isolated.  Threats of arrest or deportation caused Ms. Doe to remain in the Amal home and continue working against her will.  Ms. Doe was effectively trapped in the employ of the Amal Defendants and Defendant Lama L. L.C.

**Physical and Psychological Abuse, including Repeated Sexual Assault**

49.     Defendant Abdelkader Amal repeatedly assaulted, abused, demeaned, and humiliated Ms. Doe sexually, physically, and psychologically.

50.     For example, Defendant Abdelkader Amal kicked Ms. Doe while she was cleaning up after a party.

51.     Defendant Abdelkader Amal also sexually assaulted Ms. Doe on several occasions during her employment.  Within a few months of Ms. Doe's arrival in the United States, Defendant Hnia Amal traveled out of the country, leaving Ms. Doe alone in the house with Defendant Abdelkader Amal.  One night, Defendant Abdelkader Amal asked Ms. Doe to bring him coffee in the living room.  When Plaintiff arrived, Defendant Abdelkader Amal was completely naked and said that he "wanted her."  Ms. Doe resisted Mr. Amal's advances, crying, and begging him to leave her alone, but Defendant Abdelkader Amal forced himself on her.

52.     Defendant Abdelkader Amal sexually assaulted Ms. Doe on several other occasions during her employment.  The assaults occurred while Defendant Hnia Amal was away and no one else was in the house.  During the assaults, Defendant Abdelkader Amal would restrain and taunt Ms. Doe.

53.     Defendant Abdelkader Amal told Ms. Doe that she was nothing and that she had no power.  He said that he was a very powerful man and that no one would believe her if she told anyone about the rapes.  Defendant Abdelkader Amal threatened Ms. Doe the he could harm her and that he wouldn't let her stand in his way; that he had seen 30 like her before.  Ms. Doe was

afraid to report the rapes to anyone, and lived in dread of the times when Defendant Hnia Amal was away from the home.

### Escape from Defendants

54.      In December 2010, Defendant Hnia Amal was preparing to leave for Morocco. Ms. Doe believed that she would be raped again by Defendant Abdelkader Amal upon Ms. Amal's departure.  Ms. Doe also believed, based on information provided by Defendant Hnia Amal, that her visa would expire in less than a month, three years after her arrival in the United States. Ms. Doe resolved to escape.

55.      Ms. Doe built up the courage to speak to an Arabic-speaking neighbor, who encouraged her to leave and gave her the contact information of someone who could help her escape.

56.      The day of Ms. Doe's escape, she begged Defendant Hnia Amal for her passport and wages. Ms. Amal refused to return Ms. Doe's passport or to pay her any wages for her three years of work. Defendant Hnia Amal then left the house.

57.      Ms. Doe called the contact that her neighbor had given her, and he agreed to pick her up and help her escape.

58.      After Ms. Doe's escape from the Amal's home, she telephoned Defendant Abdelkader Amal in one more effort to obtain her confiscated passport.  Mr. Amal refused, warning Ms. Doe that she would not be able to fly with any airline because she was illegal and informed Ms. Doe that he was going to close her bank account and "erase her existence."

59.      Ms. Doe believed that her lack of identity documents left her vulnerable to arrest, imprisonment, or deportation.  Thus, she was afraid to seek help from law enforcement or report the treatment she suffered.

60.     After the abuse she suffered, Ms. Doe collapsed.  She was anxious, had trouble sleeping, and frequently cried.  She lost confidence in people and was afraid of everyone she met.  She was reluctant to go outside because she had no immigration papers and was afraid of what might happen to her if the police stopped her.  She was frequently sick and in pain due to the medical and physical problems that had gone untreated while she worked for the Amals.  She found it difficult to function.

## SUSPENSION OF STATUES OF LIMITATION

61.     Any statute of limitations relating to the causes of action alleged in this complaint on behalf of Ms. Doe has been suspended and equitably tolled for the period of Ms. Doe's false imprisonment, coerced labor, and involuntary servitude and for a reasonable time period following her escape.  Ms. Doe was unaware of her rights and unable to seek appropriate remedies, including the filing of a lawsuit, during such time period as a result of the Defendants statements and actions.

## FIRST CLAIM FOR RELIEF
### Trafficking With Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor in Violation of 18 U.S.C § 1590
### (Amal Defendants)

62.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63.     The Amal Defendants recruited Ms. Doe to work for them, transported her from Morocco to the United States, harbored her in their home in order to obtain her forced, coerced, and involuntary labor (and provide that forced, coerced, and involuntary labor to others) in violation of 18 U.S.C. § 1590.  Ms. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

64.     Ms. Doe often worked such long hours that she did not have time to eat regular

meals and was not allowed to take breaks when she requested them. Ms. Doe was not allowed to stop working when she was sick and was denied medical treatment, including after when she inhaled cleaning chemicals and started coughing up blood and had trouble breathing. She was also denied dental care for recurring tooth aches and had no access to routine medical care.

65.      As a direct and proximate result of Defendants' actions, Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

66.      Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

**SECOND CLAIM FOR RELIEF**
**Forced Labor in Violation of 18 U.S.C § 1589**
**(Amal Defendants and Defendant Lama Property Maintenance, L.L.C.)**

67.      Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68.      The Amal Defendants knowingly obtained Ms. Doe's forced and coerced labor, and provided that forced and coerced labor to others, through a scheme, plan, pattern and practice of physical, psychological, and sexual abuse; enforced isolation; threats of serious harm; and threatened abuse of legal process in violation of 18 U.S.C. § 1589. Ms. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

69.      The Amal Defendants confiscated Ms. Doe's passport; isolated her and prevented her communication with those who might be able to help her; physically, psychologically, and sexually abused her; manipulated her into believing that they were immune from prosecution in the United States and Morocco; and warned her that if she ever tried to escape or contact the authorities without the proper papers, she would be arrested, subject to imprisonment where she would be subject to physical and sexual abuse, and/or deported naked, disgraced, and impoverished from the U.S .

70.       Defendant Abdelkader Amal subjected Ms. Doe to physical, sexual and verbal abuse, which was designed to demean Ms. Doe and to prevent her from seeking help from authorities or others who could have assisted her in leaving the Defendants' residence and employ.

71.       The Amal Defendants repeatedly stressed that no one would aid or believe Ms. Doe should she escape or seek help from the legal authorities. The Amal Defendants also emphasized Defendant Abdelkader Amal's power and Plaintiff's powerlessness. The Amal Defendants told Ms. Doe these things with the intention and design of coercing Ms. Doe to remain in the Defendants' home, to continue her work for them and Defendant Lama Property Maintenance, L.L.C., and to prevent her from seeking the help of law enforcement or reporting the offenses against her.

72.       Ms. Doe was highly vulnerable to the Amal Defendants' threats, and the Amal Defendants exploited her vulnerability. At the time of her departure from Morocco, Ms. Doe was illiterate, did not speak any English, and had never traveled outside of her own country. In addition, Defendant Hnia Amal arranged for Ms. Doe's visa application, leaving Ms. Doe unaware of the kind of visa she had received.

73.       Defendant Lama Property Maintenance, L.L.C., through its owners and agents (the Amal Defendants), forced and coerced Ms. Doe to perform cleaning services at several houses and offices a week against her will and without pay in violation of 18 U.S.C. §§ 1589 and 1595.

74.       The Amal Defendants and Defendant Lama Property Maintenance, L.L.C, knowingly benefitted from Ms. Doe's labor and services because they did not compensate her as the law requires.

75.       As a direct and proximate result of the actions of the Amal Defendants and

Defendant Lama Property Maintenance, L.L.C., Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

76.        Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### THIRD CLAIM FOR RELIEF
#### Unlawful Conduct with Respect to Documents in Furtherance of
#### Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor
#### in Violation of 18 U.S.C. § 1592
#### (Amal Defendants)

77.        Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.        The Amal Defendants removed, confiscated, concealed and possessed Ms. Doe's passport upon her arrival in this country.  Despite repeated requests for its return, the Amal Defendants refused to return Ms. Doe's passport to her.  The Amal Defendants removed, confiscated, concealed, and possessed Ms. Doe's passport in order to prevent or restrict Ms. Doe's liberty to move or travel for the purpose of holding her in involuntary servitude, and subjecting her to forced labor, in violation of 18 U.S.C. § 1592.  Ms. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

79.        As a direct and proximate result of the actions of the Amal Defendants, Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

80.        Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### FOURTH CLAIM FOR RELIEF
#### Involuntary Servitude in Violation of the Thirteenth Amendment
#### to the United States Constitution and 18 U.S.C. § 1584
#### (Amal Defendants and Defendant Lama Property Maintenance, L.L.C.,)

81.        Ms. Doe realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

82.     The Amal Defendants held Ms. Doe in involuntary servitude for almost three years, forcing her to work long hours against her will without paying her the promised wages for her services.

83.     Defendant Lama Property Maintenance, L.L.C., forced Ms. Doe to clean several houses and offices a week against her will and without pay, also subjecting Ms. Doe to involuntary servitude.

84.     The Amal Defendants kept Ms. Doe in a condition of involuntary servitude through physical, legal, and psychological coercion. The Amal Defendants confiscated Ms. Doe's passport, isolated her from anyone who might be able to help her, physically and sexually abused her, manipulated her into believing that they were immune from prosecution in the United States and Morocco, and threatened her with legal and physical retaliation (including imprisonment, deportation, and detention in Morocco) should she attempt to escape.

85.     Ms. Doe was highly vulnerable to the Amal Defendants' threats, and the Amal Defendants exploited her vulnerability. At the time of her departure from Morocco, Ms. Doe was illiterate, did not speak any English, and had never traveled outside of her own country. Defendant Hnia Amal arranged Ms. Doe's visa application, leaving Ms. Doe unaware of the kind of visa she had received.

86.     Through the conduct of the Amal Defendants and Defendant Lama Property Maintenance, L.L.C., alleged herein, acting individually and in concert, these Defendants created and perpetuated a system of involuntary servitude, and led Ms. Doe to reasonably believe she had no way of avoiding this servitude, in violation of both the Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584.

87.      As a direct and proximate result of these actions, Ms. Doe has suffered severe emotional distress, physical injury, and economic losses.

88.      Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## FIFTH CLAIM FOR RELIEF
### Unpaid Federal Minimum Wages Under The Federal Labor Standards Act
### (Amal Defendants and Defendant Lama Property Maintenance, L.L.C.)

89.      Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

90.      The Amal Defendants and Defendant Lama Property Maintenance, L.L.C., employed Ms. Doe within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(d), (e), and (g).

91.      Upon information and belief, the Amal Defendants and Defendant Lama Property Maintenance, L.L.C., failed to keep hour and wage records as required by federal law.

92.      The Amal Defendants and Defendant Lama Property Maintenance, L.L.C., failed to pay Ms. Doe statutory minimum wages for all hours worked, in violation of 29 U.S.C. §§ 206(a) and (f) and regulations of the United States Department of Labor.

93.      The Amal Defendants and Defendant Lama Property Maintenance, L.L.C.'s failure to pay Ms. Doe statutory minimum wages was willful within the meaning of 29 U.S.C. § 255(a).

94.      The Amal Defendants' and Defendant Lama Property Maintenance, L.L.C.'s willful violation of the Fair Labor Standards Act entitles Ms. Doe to recovery of her unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).

## SIXTH CLAIM FOR RELIEF
### Assault
### (Defendant Abdelkader Amal)

95.         Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

96.         Defendant Abdelkader Amal engaged in acts intended to cause harmful or offensive contact with Ms. Doe or apprehension of such contact when he sexually assaulted her.

97.         Defendant Abdelkader Amal's acts caused a reasonable apprehension of an imminent battery in Ms. Doe.

98.         Defendant Abdelkader Amal further placed Ms. Doe into reasonable apprehension of harmful contact by telling Ms. Doe that her life meant "nothing" outside of the Amals' home, that no one would believe her if she told them about the sexual abuse, and that Ms. Doe did not have any power to act against him.

99.         The repeated sexual abuse of Ms. Doe by Defendant Abdelkader Amal also induced Ms. Doe to continue in a condition of servitude.

100.        Defendant Abdelkader Amal's acted with malice and in willful and wanton disregard of Ms. Doe's rights.

101.        As a direct and proximate result of Defendant Abdelkader Amal's conduct, Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

102.        Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### SEVENTH CLAIM FOR RELIEF
#### Battery
#### (Defendant Abdelkader Amal)

103.        Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

104.        Defendant Abdelkader Amal caused and committed an unwanted touching of Ms.

Doe against her consent and without excuse or justification when he forced her to engage in sexual intercourse with him on repeated occasions when Ms. Amal was away on trips to Morocco.

105.     Defendant Abdelkader Amal forced himself on Ms. Doe despite her resistance and pleas for him to leave her alone.

106.     The repeated physical and sexual abuse of Ms. Doe by Defendant Abdelkader Amal also coerced Ms. Doe to continue in a condition of servitude.

107.     Defendant Abdelkader Amal acted with malice and in willful and wanton disregard of Ms. Doe's rights.

108.     As a direct and proximate result of Defendant Abdelkader Amal's actions, Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

109.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

**EIGHTH CLAIM FOR RELIEF**
**Fraud and Fraudulent Inducement**
**(Amal Defendants)**

110.     Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

111.     The Amal Defendants made intentional and knowing misrepresentations and false promises to Ms. Doe regarding the conditions of her employment in the United States, including her hours and remuneration, in order to induce her to enter into an employment contract with them and to come to the United States to work for them.

112.     The Amal Defendants promised Ms. Doe that her work duties and work hours would be the same as they had been in Morocco, but that she would be paid substantially more. After the U.S. Embassy rejected Ms. Doe's initial visa application because the promised wages

were too low, Hnia Amal promised Ms. Doe that she would correct the contract so that it would be approved. Hnia Amal promised Ms. Doe that she would receive everything provided for in this new contract, thereby adopting the terms of the written contract.

113.    Upon information and belief, at the time that the Amal Defendants made the foregoing representations and promises to Ms. Doe, they had no intention of carrying out such representations and promises.

114.    Ms. Doe reasonably relied on these misrepresentations and false promises of the Amal Defendants to her detriment and, as a result, traveled to the United States where she was forced to work without the promised wages for the Amal Defendants and their company, and endure the verbal, physical, psychological, and sexual abuse that accompanied this employment.

115.    After her arrival in the United States, the Amal Defendants made further intentional and knowing misrepresentations and false promises to Ms. Doe that they were depositing the full amount of her wages for her work in their home and for her work with their cleaning company, Defendant Lama Property Maintenance, L.L.C., into a bank account for her in order to induce her to continue in a condition of involuntary servitude and forced labor.

116.    At the time that the Amal Defendants made the foregoing representations and promises to Ms. Doe regarding this bank account, they had no intention of carrying out such representations and promises.

117.    Ms. Doe relied on these misrepresentations and false promises of the Amal Defendants to her detriment and, as a result, continued to perform services for the Amal Defendants and Defendant Lama Property Maintenance, L.L.C., without receiving the promised wages.

118.    Ms. Doe never received and had no access to the funds deposited in this bank

account.   The Amals required Ms. Doe to sign over checks for the funds in this account to themselves or their friends.   When Ms. Doe escaped from the Amal Defendants, Defendant Abdelkader Amal threatened to close the bank account and erase Ms. Doe's existence.

119.      The Amal Defendants made the foregoing misrepresentations and false promises willfully and wantonly, and with a conscious disregard for the rights of Ms. Doe.

120.      As a direct and proximate result of the Amal Defendant's misrepresentations and false promises, Ms. Doe has suffered severe emotional distress, physical injuries, and economic losses.

121.      Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## NINTH CLAIM FOR RELIEF
### Breach of Contract
### (Amal Defendants)

122.      Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

123.      Ms. Doe and the Amal Defendants entered into a valid, legally enforceable employment agreement in 2007, whereby Ms. Doe agreed to work as a domestic worker in their home in the United States, and, in return, the Amal Defendants agreed to pay Ms. Doe a lawful, agreed upon sum for her services.   Ms. Doe's duties were to be similar to that in Morocco — cooking and cleaning — and Ms. Doe was assured the conditions of employment would be fair and comparable to her employment for the Amal Defendants in Morocco.

124.      After the U.S. Embassy rejected Ms. Doe's initial visa application because the wages promised in the written contract with Mr. Khantach were too low, Hnia Amal promised Ms. Doe that she would correct the contract so that it would be approved.   Hnia Amal promised Ms. Doe that she would receive everything provided for in this new contract, thereby adopting

the terms of the written contract.

125.     Ms. Doe fully performed the terms of the agreement by working as a domestic worker in the Amal Defendants' household.

126.     The Amal Defendants materially breached the contract by, *inter alia*, failing to pay the agreed amount, forcing Ms. Doe to work more than forty hours per week, forcing her to assume non-contractual duties by working in their business and cleaning their friends' homes, subjecting her to harsh and abusive working conditions, confiscating her passport, refusing to allow Ms. Doe to return to Morocco, and holding Ms. Doe in involuntary servitude.

127.     Upon information and belief, the Amal Defendants willfully and wantonly breached their contract with Ms. Doe, with a conscious disregard for Ms. Doe's rights.

128.     As a direct and proximate result of the Amal Defendant's breach of contract, Ms. Doe has suffered damages including economic losses, physical injuries, and severe emotional distress.

129.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### TENTH CLAIM FOR RELIEF
#### Unjust Enrichment/Quantum Meruit
#### (Amal Defendants and Defendant Lama Property Maintenance, L.L.C.,)

130.     Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

131.     From approximately December 2007 to December 2010, Ms. Doe conferred a benefit on the Amal Defendants by rendering services as a live-in domestic servant in good faith and with the reasonable expectation that she would be fairly compensated for her services.

132.     Ms. Doe also conferred a benefit on Defendant Lama Property Maintenance, L.L.C., by cleaning multiple houses and offices weekly in good faith and with the reasonable

expectation that she would be properly compensated for her services.

133.     The Amal Defendants and Defendant Lama Property Maintenance, L.L.C., knew about and required these services, and should have reasonably expected to pay Ms. Doe for her services.

134.     The Amal Defendants and Defendant Lama Property Maintenance, L.L.C., accepted and retained the benefit of these services, but failed to compensate Ms. Doe for the fair market value of her services.

135.     The Amal Defendants and Defendant Lama Property Maintenance, L.L.C., unjustly enriched themselves at Ms. Doe's expense and it would be inequitable for these Defendants to be permitted to retain such benefits without paying Ms. Doe the value of the benefit conferred.

136.     Upon information and belief, the conduct of the Amal Defendants and Defendant Lama Property Maintenance, L.L.C., was willful and wanton, and demonstrated a conscious disregard for Ms. Doe's rights.

137.     As a direct and proximate result of Defendants actions, Ms. Doe has suffered economic losses.

138.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

**ELEVENTH CLAIM FOR RELIEF**
**False Imprisonment**
**(Amal Defendants)**

139.     Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

140.     The Amal Defendants knowingly and intentionally restrained Ms. Doe's liberty and freedom of movement without legal excuse through threats of serious harm, legal coercion, and verbal and psychological abuse.

141.     Among other things, the Amal Defendants confiscated Ms. Doe's passport and visa, and told her that if she attempted to escape or seek help without these legal documents that she could be arrested, imprisoned (where she would be subject to physical and sexual abuse) and deported in disgrace. The Amal Defendants instructed Ms. Doe not to leave their house alone, and told her that she could be shot if she ventured out by herself.

142.     Ms. Doe was conscious of being confined and did not consent to her confinement.

143.     The Amal Defendants confined Ms. Doe knowingly and willfully and with malice and reckless disregard for her rights.

144.     As a direct and proximate result of Defendants actions, Ms. Doe suffered economic losses, physical injuries, and severe emotional distress.

145.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

**TWELFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Amal Defendants)**

146.     Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

147.     The Amal Defendants acted with the intent to cause and did cause Ms. Doe severe emotional distress by, among other things, forcing her to work excessive hours without paying her the promised wages, denying her medical and dental treatment, withholding her passport and suggesting that her lack of identity documents left her vulnerable to imprisonment and deportation should she try to escape or seek help, suggesting to Ms. Doe that the Amals had connections in Morocco that could retaliate against her if she attempted to return to Morocco, isolating Ms. Doe by telling her not to leave the home or speak to strangers, and psychologically abusing her.

148.     Defendant Abdelkader Amal acted with the intent to cause and did cause Ms. Doe severe emotional distress by sexually abusing Plaintiff.

149.     The Amal Defendants also acted as described above with a reckless disregard for the high probability that severe emotional distress would occur.

150.     The Amal Defendants' actions were extreme and outrageous, and put Ms. Doe in fear for her safety and health.

151.     The Amal Defendants committed these acts maliciously and oppressively, in wanton and willful disregard of Ms. Doe's rights.

152.     As a direct and proximate result of the Amal Defendants' actions, Ms. Doe suffered and continues to suffer severe mental distress, humiliation, and emotional injuries that have made it difficult for her to function.

153.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### THIRTEENTH CLAIM FOR RELIEF
#### Negligent Infliction of Emotional Distress
#### (Amal Defendants)

154.     Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

155.     The Amal Defendants owed a duty to Ms. Doe as employers to provide a lawful and non-abusive working environment.  The Amal Defendants also owed a duty to Ms. Doe as de facto guardians because she was utterly dependent upon them in the United States.  Unfamiliar with U.S. customs and institutions, and unable to speak English, Ms. Doe relied on the Defendants for access to medical care, shelter, and food.

156.     These Amal Defendants negligently engaged in outrageous conduct towards Ms.

Doe and caused Ms. Doe to suffer severe emotional distress by, among other things, forcing her to work excessive hours without paying her the promised wages, denying her medical and dental treatment, withholding her passport and suggesting that her lack of identity documents left her vulnerable to imprisonment and deportation should she try to escape or seek help, suggesting to Ms. Doe that the Amals had connections in Morocco that could retaliate against her if she attempted to return to Morocco, isolating Ms. Doe by telling her not to leave the home or speak to strangers, and psychologically abusing her.

157.      The Amal Defendants knew or should have known that their outrageous conduct towards Ms. Doe would cause her to suffer severe emotional distress because it was foreseeable that a domestic worker regularly and repeatedly forced against her will to work long hours— without pay, forcibly isolated from the outside world, without access to her identity and immigration papers, subject to physical and psychological abuse, without access to medical care when ill or injured, under threat of imprisonment and deportation, and without knowledge of when, if ever, her duties would end and she would be permitted to return to her home country and family—would suffer severe mental distress.

158.      The Amal Defendants breached their duty to Ms. Doe by negligently engaging in the conduct described herein.

159.      As a direct and proximate result of the Amal Defendants' actions, Ms. Doe has suffered and continues to suffer severe mental distress, humiliation, and emotional injuries that have made it difficult for her to function.

160.      Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### FOURTEENTH CLAIM FOR RELIEF
### Alien Tort Claims Act Violation Under 28 U.S.C. § 1350
### For Human Trafficking, Forced Labor, and Involuntary Servitude
### (Amal Defendants and Defendant Lama Property Maintenance, L.L.C.,)

161.       Ms. Doe realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

162.       The Amal Defendants and Defendant Lama Property Maintenance, L.L.C.'s actions as alleged above constitute the torts of trafficking in persons, forced labor, and involuntary servitude. These practices constitute modern-day forms of slavery and are torts in violation of the law of nations.

163.       Numerous international treaties, customary international law norms, domestic statutes and case law, and international case law establish that the modern manifestations of slavery described above are violations of the law of nations. Such authorities include the Universal Declaration of Human Rights, art. 4, G.A. Res. 217A, U.N. GAOR, 3d Sess., U.N. Doc. A/810 (1948); the International Covenant on Civil and Political Rights, art. 8, Dec. 19, 1966, 999 U.N.T.S. 171, 61 I.L.M. 368 (1967); American Convention on Human Rights, art. 6, June 1, 1977, 1114 U.N.T.S. 123; the Slavery, Security, Forced Labor and Similar Institutions and Practices Convention of 1926, Sept. 25, 1926, 46 Stat. 2183, 60 U.N.T.S. 253; the Supplementary Convention on the Abolition of Slavery, the Slave Trade and Institutions and Practices Similar to Slavery, Sept. 7, 1956, 18 U.S.T. 3201, 266 U.N.T.S. 3; the Convention Concerning Forced or Compulsory Labour (ILO No. 29), June 28, 1930, 39 U.N.T.S. 55; and the Convention Concerning the Abolition of Forced Labour (ILO No. 105), June 25, 1957, 320 U.N.T.S. 291; the Convention on the Elimination of All Forms of Discrimination Against Women, art. 6, Dec. 18, 1979, 19 I.L.M. 33, 37, 1249 U.N.T.S. 13; the Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing

the United Nations Convention Against Transnational Organized Crime, Nov. 15, 2000, G.A. Res. 55/25, annex II, U.N. GAOR, 55th Sess., Supp. No. 49, at 60, U.N. Doc. A/45/49 (2001); and the Declaration on the Elimination of Violence Against Women, art. 2, U.N., Dec. 30, 1993, G.A. Res. 48/104, U.N. GAOR, 48th Sess., Supp. No. 49, at 217, U.N. Doc. A/Res/48/104 (1994), among others.  These prohibitions against trafficking and the modern manifestations of slavery are reflected in United States law, including in the Trafficking Victims Protection Act, 18 U.S.C. § 1590, and other authorities.

## DEMAND FOR JURY TRIAL

164.	Ms. Doe is entitled to and hereby demands a jury trial in this matter.

## AD DAMNUM CLAUSE

165.	Ms. Doe respectfully requests that judgment be entered in her favor against all Defendants and prays as follows:

166.	Award Ms. Doe damages in an amount to be calculated at trial including but not limited to the full amount of Ms. Doe's loss for Defendants' violation of federal laws including: trafficking with respect to peonage, slavery, involuntary servitude or forced labor in violation of 18 U.S.C § 1590; forced labor in violation of 18 U.S.C. § 1589; unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592;   involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution and 18 U.S.C. § 1584; and violation of the law of nations for such torts as trafficking, forced labor, and involuntary servitude;

167.	Award Plaintiff damages for unpaid minimum wages plus liquidated damages in an equal amount with interest pursuant to 29 U.S.C. §§ 201, *et seq.*, and the United States Department of Labor Regulations in an amount to be calculated at trial;

168.      Award Ms. Doe compensatory and punitive damages in an amount to be calculated

at trial for Defendants' violations of Virginia common law including:  assault; battery, fraud and

fraudulent   inducement,   breach   of   contract,   unjust   enrichment/quantum   meruit,   false

imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional

distress;

169.      Award Ms. Doe prejudgment and post judgment interest;

170.      Award Plaintiff reasonable attorneys' fees, together with the cost and disbursement

of this action; and

171.      Grant such other and further relief as this Court deems just and proper.


November  27 2012


                              Respectfully submitted,



                              Joshua S. Devore
                               VA. Bar No. 45312
                              Agnieszka Fryszman
                              Alysson Ford Ouoba
                              *Counsel for Plaintiff Jane Doe*
                              COHEN MILSTEIN SELLERS
                                & TOLL PLLC
                              1100 New York Avenue, N.W.
                              West Tower, Suite 500
                              Washington, D.C.  20005-3964
                              Telephone: 202-408-4600
                              Facsimile:  202-408-4699