FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2012 NOV 27 P 4:36

CLERK US DISTRICT COURT ALEXANDRIA, VIRGINIA

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>ABDELKADER AMAL, HNIA AMAL, LAMA PROPERTY MAINTENANCE, LLC,<br><br>Defendants. | Case No. 1:12CV1359 |

**PLAINTIFF'S EX PARTE MOTION TO COMMENCE AN ACTION AND PROCEED UNDER A PSEUDONYM, AND MEMORANDUM IN SUPPORT THEREOF**

Joshua S. Devore
Agnieszka M. Fryszman
Alysson Ford Ouoba
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........ 1

LEGAL ARGUMENT ........ 2

I. This Court has discretion to protect the privacy and safety of a party by permitting a party to proceed under a pseudonym. ........ 2

II. Use of a pseudonym in this action would preserve privacy in a matter that is sensitive and of a highly personal nature. ........ 3

III. Identification poses a risk of retaliatory physical and legal harm to Plaintiff and her family. ........ 7

IV. There is a strong public interest in permitting Plaintiff to proceed anonymously. ........ 10

V. There is no risk of unfairness to Defendants if Plaintiff is permitted to proceed anonymously. ........ 11

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**


*A.B.T. v. U.S. Citizenship & Immigration Servs.*, 2012 WL 2995064 (W.D. Wash. July 20, 2012) ....7, 8, 11, 12

*Doe v. N.C. Cent. Univ.*, 1999 WL 1939248 (M.D.N.C. Apr. 15, 1999) ....5

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) ....3, 4, 6, 11, 12

*Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72 (D.R.I. 1992) ....6

*Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869 (7th Cir.1997) ....4

*Doe v. Bolton*, 410 U.S. 179 (1973) ....2

*Doe v. Diocese Corp.*, 647 A.2d 1067 (Conn. Super. Ct. 1994) ....5, 10

*Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) ....4, 5, 10, 11

*Doe v. I.N.S.*, 867 F.2d 285 (6th Cir. 1989) ....2, 7

*Doe v. Johnson*, 2003 WL 22962232 (Conn. Super. Ct. Dec. 2, 2003) ....4

*Doe v. Penzato*, 2011 WL 1833007 (N.D. Cal. May 13, 2011) ....3, 4, 11

*Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) ....10, 11

*Doe v. Rostker*, 89 F.R.D. 158 (N.D. Cal. 1981) ....3

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ....3, 7, 10

*Doe v. Univ. of R.I.*,
1993 U.S. Dist. LEXIS 19257 (D.R.I. Dec. 28, 1993) .......... 5

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058, 1067 (9th Cir. 2000) .......... *passim*

*E.E.O.C. v. ABM Indus. Inc.*,
249 F.R.D. 588 (E.D. Cal. 2008) .......... 12

*EW v. N.Y. Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003) .......... 12

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993) .......... 2, 3, 7

*Jane Doe 1 v. Merten*,
219 F.R.D. 387 (E.D. Va. 2004) .......... 3

*John Doe 140 v. Archdiocese of Portland in Or.*,
249 F.R.D. 358 (D. Or. 2008) .......... 4, 6, 12

*Patient v. Corbin*,
37 F. Supp. 2d 433 (E.D. Va. 1998) .......... 12

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
253 F.3d 678 (11th Cir. 2001) .......... 12

*Roe v. Wade*,
410 U.S. 113 (1973) .......... 2

*Sealed Plaintiff v. Sealed Defendant #1*,
537 F.3d 185 (2d Cir. 2008) .......... 3, 4, 5, 10

**STATUTES**

18 U.S.C. § 1584 .......... 1

Trafficking Victims Protection Act,
18 U.S.C. §§ 1589, 1590, 1592, 1595 .......... 1

**OTHER AUTHORITIES**

Congressional Research Service, *Trafficking in Persons: U.S. Policy and Issues for Congress* (June 20, 2007) .......... 11

Freedom House, *Women's Rights in the Middle East and North Africa 2010 – Morocco* (Mar. 3, 2010) .......... 9

*Morocco protest after raped Amina Filali kills herself*, BBC News, (Mar. 15, 2010) ....... 9

Global Rights Shadow Report, *Challenges with Addressing Domestic Violence in Compliance with the Convention Against Torture, 47th Session of the Committee Against Torture*(Oct. 2011) ....... 8

Human Rights Watch, *Morocco: Girl's Death Highlights Flawed Laws* (March 23, 2012) ....... 6, 8, 9

Commission on Human Rights, *U.N. Rep. of the Special Rapporteur on violence against women, its causes and consequences*, U.N. Doc. E/CN.4/2002/83 (Jan. 31, 2002) ....... 9

Plaintiff, a victim of human trafficking and sexual assault, hereby moves this Court to allow her to commence an action and proceed under a pseudonym. Use of a pseudonym is necessary to protect Plaintiff's privacy and safety, as well as that of her family. A proposed Order is attached hereto as Exhibit 1.

## FACTUAL BACKGROUND

In 2007, former Moroccan diplomats Hnia and Abdelkader Amal enticed Ms. Doe to travel to the United States to work for them as a live-in domestic servant in their home. *See* Compl. ¶¶ 11-13. After her arrival, the Amals confiscated Ms. Doe's passport and subjected her to forced and involuntary labor. *Id.* ¶¶ 22-46. Ms. Doe was required to work more than sixty hours per week in the Amals' home, for their cleaning company, and at their friends' homes, all without compensation. *Id.* ¶¶ 23-25, 29-34. She was not provided with days off or vacation time and she was not allowed to take breaks when she requested them. *Id.* ¶¶ 23, 27, 32. She was not permitted to stop working when she was ill and she was denied medical treatment. *Id.* ¶ 28. On several occasions when Mrs. Amal was away, Mr. Amal raped Ms. Doe. *Id.* ¶ 49-51.

The Amals kept Ms. Doe in involuntary servitude through continued false promises of future payment, confiscation of her passport, coercion, isolation, and threats of imprisonment and deportation. *Id.* ¶ 33-46. After three years, she finally escaped from their home. *Id.* ¶ 52-56. Ms. Doe continues to fear that the Amals may retaliate against her, particularly now that she is filing a complaint against them under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1590, 1592, 1595; and for involuntary servitude in violation of the Thirteenth Amendment to the United States

Constitution and 18 U.S.C. § 1584; as well as for related state law claims. *See* Ex. 2, Decl. of Plaintiff in Support of Her Motion to Commence an Action and Proceed Under a Pseudonym ¶¶ 5-10. She also fears that if her name is made public, she and her family could be shunned, ostracized, and dishonored by the conservative Moroccan community. *Id.* ¶¶ 12-14.

## LEGAL ARGUMENT

### I. This Court has discretion to protect the privacy and safety of a party by permitting a party to proceed under a pseudonym.

Although the federal rules do not address the use of pseudonyms in litigation, it is well established that the courts have the authority to protect the privacy and safety of a party by permitting a party to commence an action and pursue her claims anonymously. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000); *Doe v. I.N.S.*, 867 F.2d 285, 286 n.1 (6th Cir. 1989).[1] This authority is committed to the sound discretion of the trial court. *James*, 6 F.3d at 238 ("The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion.").

To guide the exercise of this discretion, the Fourth Circuit has recognized several factors that courts should consider when deciding whether to allow a party to proceed anonymously. These factors include: (1) whether the justification asserted by the

[1] The Supreme Court gave this practice its implicit imprimatur in *Roe v. Wade*, 410 U.S. 113, 120-121, fn. 4 (1973), and *Doe v. Bolton*, 410 U.S. 179, 184, fn. 6 (1973).

requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. *James*, 6 F.3d at 238. This list of factors is not exhaustive, and not every factor will be relevant to each case. *See id.*; *Jane Doe 1 v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) ("[T]he particular facts of a case may suggest the relevance of additional factors."); *see also Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (rejecting a "rigid" test for determining whether a party may proceed under a pseudonym). For example, other courts commonly evaluate whether the public interest is furthered by requiring the plaintiff to disclose his identity. *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008). Ultimately, a plaintiff should be granted the right to proceed anonymously where, as here, the "privacy or confidentiality concerns are . . . sufficiently critical." *James*, 6 F.3d at 238.

## II. Use of a pseudonym in this action would preserve privacy in a matter that is sensitive and of a highly personal nature.

Anonymity is appropriate where the "justification asserted by the requesting party . . . is to preserve privacy in a matter of sensitive and highly personal nature" rather than "merely to avoid the annoyance and criticism that may attend any litigation." *James*, 6 F.3d at 238; *see also Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981) ("A plaintiff should be permitted to proceed anonymously in cases where a substantial privacy interest

is involved."). A person's sexual history – particularly where that history includes sexual assault and rape – is one of the most sensitive and highly personal of issues. For that reason, many courts have concluded that "sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *Doe v. Penzato*, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011) ("[P]laintiffs may be permitted to proceed anonymously where there are allegations of sexual assault, and they may fear public exposure and the stigma of having been victim to such a crime."); *see also Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir.1997) ("[F]ictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses.").

Plaintiffs' allegations of repeated rape and trafficking are precisely the kind of sensitive and highly personal issues that courts have held should be protected as private. *See Penzato*, 2011 WL 1833007, at *3 (granting anonymity to sexual assault and trafficking victim); *John Doe 140 v. Archdiocese of Portland in Or.*, 249 F.R.D. 358, 361 (D. Or. 2008) (granting anonymity to victim of sexual assault); *Kolko,* 242 F.R.D. at 195; *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (same); *see also Sealed Plaintiff*, 537 F.3d at 187 (reversing decision denying anonymity to victim of sexual assault). Plaintiff has already suffered severe emotional, physical and psychological damages from her ordeal. Publication of Plaintiff's name would open her to inquiries from the press and other interested individuals, compromising her ability to recover from her trauma. Plaintiff seeks to avoid not mere annoyance, but the increased emotional and psychological trauma of having her ordeal publicized by and scrutinized in the press and

by family, friends, acquaintances, and strangers. *See Archdiocese of Portland*, 249 F.R.D. at 358 ("[I]f required to make his name known publicly, John would face a very real risk of harassment, ridicule, and personal embarrassment. The experience of sexual abuse can be deeply psychologically traumatic, and public knowledge of such abuse can trigger new trauma even years after the fact."); *Doe v. Johnson*, 2003 WL 22962232 (Conn. Super. Ct. Dec. 2, 2003) (forcing victim of sexual assault to proceed without pseudonym "could only subject the plaintiff to additional psychological harm and distress"); *see also Evans*, 202 F.R.D. at 176; *Doe v. Diocese Corp.*, 647 A.2d 1067 (Conn. Super. Ct. 1994).

Indeed, because of the sensitive and highly personal nature of this issue, Plaintiff has not told any of her family, friends, or acquaintances about the sexual assaults she endured. Nor has she taken her allegations to the press. Plaintiff's effort to keep this sensitive and highly personal information confidential strongly supports her request for anonymity. *Compare Evans*, 202 F.R.D. at 176 (granting anonymity to sexual assault victim who had kept her identity confidential such that "some of [her] own close family and friends [we]re not aware of the circumstances giving rise to this lawsuit"), *and Diocese Corp.*, 647 A.2d at 1068-69 (granting anonymity to sexual assault victim who had not told friends and close family members about the details of the assaults), *with Doe v. Univ. of R.I.*, 1993 U.S. Dist. LEXIS 19257, at *7 (D.R.I. Dec. 28, 1993) (denying plaintiff's request to proceed under a pseudonym because, among other things, she admitted that her identity was well known to students at the university and she had already been a named party in related litigation), *and Doe v. N.C. Cent. Univ.*, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999) (denying request for anonymity by plaintiff

who had leveled several allegations against defendant in the news media). *See also Sealed Plaintiff*, 537 F.3d at 190 ("whether the plaintiff's identity has thus far been kept confidential" is a factor district courts should consider in determining whether to allow a party to proceed under pseudonym).

Plaintiff is particularly vulnerable to increased emotional trauma and social stigmatization because she is part of a conservative Muslim community that condemns and criminalizes sex outside of marriage. *See* Ex. 3, Human Rights Watch, *Morocco: Girl's Death Highlights Flawed Laws* (March 23, 2012), http://www.hrw.org/news/2012/03/23/morocco-girl-s-death-highlights-flawed-laws [hereinafter HRW Report] (observing that rape victims are dishonored and may be prosecuted for sex outside marriage if they are unable to secure a guilty verdict against the perpetrator). Women who are raped are disgraced and shunned in Plaintiff's culture, and are often considered unmarriageable. Ex. 2, Plaintiff's Decl. ¶¶ 12-13; Ex. 3, HRW Report. Plaintiff has not even told her family that she was raped out of fear of such consequences. Ex. 2, Plaintiff's Decl. ¶ 12. Although Plaintiff no longer lives in Morocco, her interactions in the United States are primarily limited to the Moroccan and similar Arabic communities here because of her limited English skills. In addition, Plaintiff would like to visit her family and friends in Morocco. Plaintiffs' unique vulnerability because of the particularly high stigmatization of this issue in Plaintiff's community further supports her request to proceed under a pseudonym. *See Kolko*, 242 F.R.D. at 197 (because of the ease with which the public may access court files, plaintiff had a reasonable fear of ostracism by his orthodox Jewish community even though he no longer lived in Brooklyn); *Archdiocese of Portland*, 249 F.R.D. at 358, 360 (Catholic plaintiff was

peculiarly vulnerable to risk of harassment, ridicule, and personal embarrassment because of his allegations of sexual abuse by clergy); *see also Advanced Textile Corp.*, 214 F.3d at 1069 (reversing decision denying anonymity because trial court had failed to consider plaintiffs' unique vulnerability, among other things); *Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72, 74 (D.R.I. 1992) (noting that the "common thread" in cases permitting plaintiffs to permit anonymously is "the presence of some social stigma").

## III. Identification poses a risk of retaliatory physical and legal harm to Plaintiff and her family.

Courts are particularly willing to permit a plaintiff to proceed anonymously where identification of the plaintiff poses a risk of retaliatory physical or legal harm to the plaintiff or innocent non-parties. *See James*, 6 F.3d at 238. The threat of retaliation may come from the defendants themselves, or from the larger community, foreign governments, or other non-parties. *See Doe v. I.N.S.*, 867 F.2d 285, 286 n. 1 (6th Cir. 1989) (permitting petitioner to proceed anonymously in order to protect petitioner's family from possible reprisals by Chinese government or others in China); *Stegall*, 653 F.2d at 186 (permitting plaintiffs to proceed anonymously where they were at risk of harassment and violent reprisals by a "community hostile to the viewpoint reflected in plaintiffs' complaint"); *A.B.T. v. U.S. Citizenship & Immigration Servs.*, 2012 WL 2995064, at *3 (W.D. Wash. July 20, 2012) ("Retaliation may include harm by third parties, reprisals against nonparties and economic harm.").

Plaintiff is afraid that if her name is made public, the press will find out where she lives and might inadvertently provide this information to the Defendants, thereby placing her at risk of physical retaliation by the Defendants. Ex. 2, Plaintiff's Decl. ¶ 10. The

Defendants are well-connected in the Moroccan community, with many friends and contacts in the Moroccan government, military, and intelligence services. *Id.* ¶ 7. The Defendants told Plaintiff that Mr. Amal can have people detained and harmed by the police in Morocco, and Plaintiff heard Mr. Amal make phone calls to Morocco ordering that someone be detained and harassed at the Moroccan airport. *Id.* Mr. Amal also threatened Plaintiff, telling her that "I can harm you, and you can't stand in my way." *Id.* ¶ 8. Plaintiff's family has also urged her not to bring a civil case against the Amals because her family is afraid of what the Defendants might do. *Id.* ¶ 9. Plaintiff is afraid that if Defendants find out where she lives, they would harm her. *Id.* ¶¶ 6, 8.

Identification of Plaintiff would also subject her to a risk of prosecution and imprisonment if she were ever to return to Morocco. Moroccan law criminalizes sexual relations outside marriage. *See* Ex. 3, HRW Report; Ex. 4, Global Rights Shadow Report, *Challenges with Addressing Domestic Violence in Compliance with the Convention Against Torture, 47th Session of the Committee Against Torture*, 9 (Oct. 2011), http://www.globalrights.org/site/DocServer/2011-10-14_Final_Shadow_Report_to_ CAT.pdf?docID=12983 [hereinafter Global Rights Shadow Report]. If a woman accuses a man of rape, as Plaintiff has in this case, and does not prevail against the perpetrator, she may be prosecuted herself. Ex. 3, HRW Report; Ex. 4, Global Rights Shadow Report at 9. Further, because of the Defendants' powerful political connections in Morocco, they could influence court personnel and prevent her from defending herself. *See* Compl. ¶ 47. Courts have held that plaintiffs at risk of similar arrest or prosecution from foreign governments should be permitted to proceed anonymously. *See, e.g.*, *A.B.T.*, 2012 WL 2995064, at *3 (permitting Eritrean

and Indian plaintiffs to proceed anonymously in order to avoid their arrest and prosecution if they were to return to their respective countries); *see also Advanced Textile Corp.*, 214 F.3d at 1063 (trial court erred by failing to consider risk to plaintiffs of arrest in China, among other things).

Plaintiff and her family also face the prospect of social and economic retaliation by members of the conservative Moroccan community if her name is made public. In Morocco, women who have been raped are considered to have brought disgrace and dishonor upon their families. Ex. 3, HRW Report; Ex. 5, Freedom House, *Women's Rights in the Middle East and North Africa 2010 – Morocco*, 4 (Mar. 3, 2010), http:www.unhcr.org/refworld/docid/4b990120c.html [hereinafter Freedom House Report]; Ex. 6, *Morocco protest after raped Amina Filali kills herself*, BBC News (Mar. 15, 2012), http://www.bbc.co.uk/news/world-africa-17379721 [hereinafter BBC Article]. To reclaim their families honor, these women may be forced to marry their rapists. Ex. 3, HRW Report; Ex. 5, Freedom House Report; Ex. 6, BBC Article. In one recent case, a girl committed suicide by drinking rat poison after she was forced to marry her rapist, who then physically abused her; despite her pleas to the police, they refused to help. Ex. 3, HRW Report; Ex. 6, BBC Article. Honor killings of women who have disgraced their families still occur in Morocco. Ex. 7, Commission on Human Rights, *U.N. Rep. of the Special Rapporteur on violence against women, its causes and consequences*, ¶ 21, U.N. Doc. E/CN.4/2002/83 (Jan. 31, 2002); Ex. 5, Freedom House Report at 4. Plaintiff is afraid that if her name is made public, she could face similar retaliation, and for this reason she has not even told her family of the sexual abuse she suffered. Ex. 2, Plaintiff's Decl. ¶ 12. Plaintiff also fears that she and her family could be shunned, ostracized, and

dishonored by the Moroccan community if her name is revealed. *Id.* ¶ 13. Plaintiff's efforts to begin a new life for herself and obtain secure employment could be impeded if friends and potential future employers learn that she was trafficked and abused, particularly since Plaintiff's limited English skills limit her employability to the Arabic-speaking community.

## IV. There is a strong public interest in permitting Plaintiff to proceed anonymously.

In evaluating whether a plaintiff should be permitted to proceed anonymously, many courts also consider "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity." *Sealed Plaintiff*, 537 F.3d at 190; *see also Evans*, 202 F.R.D. at 175-76. Here, Plaintiff is not asking that the proceedings be closed or that any information or documents be kept from public view. Plaintiff is asking only that her name not be disclosed. As the Fifth Circuit observed in *Doe v. Stegall*,

> Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials . . . are not inevitably compromised by allowing a party to proceed anonymously.

653 F.2d at 185. In this case, "although the public certainly has an interest in the *issues* [Plaintiff's] complaint raises, protecting her identity will not impede the public's ability to follow the proceedings." *Evans*, 202 F.R.D. at 176; *see also Advanced Textile Corp.*, 214 F.3d at 1072 ("[W]e fail to see[] how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case."); *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) ("Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings."); *Diocese Corp.*, 647 A.2d at

1072 ("[I]t is difficult to see what public interest there would be in having the plaintiff's name revealed. The public will have access to all the records of the case, just not the plaintiff's real name.").

In addition, courts have repeatedly recognized that requiring plaintiffs to proceed without a pseudonym on matters of sensitive and highly personal issues where they are at risk of retaliation may chill litigation and thereby undermine the public's interest in having such claims considered on their merits and ensuring that victims have access to the justice system. *See Advanced Textile Corp.*, 214 F.3d at 1073; *A.B.T.*, 2012 WL 2995064, at *6; *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 468. This is especially true in cases of sexual assault and trafficking, where denying one plaintiff such protections may deter other victims from coming forward and enforcing their rights. *See Evans*, 202 F.R.D. at 176 ("[T]he public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights . . . ."); *see also Penzato*, 2011 WL 1833007, at *5; *Kolko*, 242 F.R.D. at 195. Indeed, in trafficking cases, where the victims often come from conservative foreign countries and the risk of stigmatization and retaliation may be much higher, victims are especially likely to be deterred if they know that they will not be allowed to proceed under a pseudonym. Permitting Plaintiff to proceed anonymously on her claims of trafficking, forced labor, and sexual abuse will encourage similar victims to come forward. *See* Ex. 8, Congressional Research Service, *Trafficking in Persons: U.S. Policy and Issues for Congress*, 1 (June 20, 2007) (estimating that 17,500 persons are trafficked to the United States each year).

## V. There is no risk of unfairness to Defendants if Plaintiff is permitted to proceed anonymously.

Defendants will suffer no prejudice if Plaintiff is permitted to file and pursue her action under a pseudonym. Plaintiff was the only domestic worker in the Amals U.S. home during the relevant period, and Defendants can therefore easily determine Plaintiff's identity based on the allegations. *See Archdiocese of Portland*, 249 F.R.D. at 361 (no prejudice to Defendants who were already cognizant of Plaintiff's true identity); *Kolko*, 242 F.R.D. at 198 (same); *see also A.B.T.*, 2012 WL 2995064, at *5. Plaintiff is also willing to confirm her identity to the Defendants pursuant to an appropriate confidentiality order. *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) (no prejudice to Defendants where Plaintiff agreed to disclose her name to them). Moreover, protecting Plaintiff's identity will not prevent the Defendants from conducting discovery or presenting a robust defense. *See Kolko*, 242 F.R.D. at 199 (defendants not prejudiced by requirement that non-party witnesses sign confidentiality agreements); *see also E.E.O.C. v. ABM Indus. Inc.*, 249 F.R.D. 588, 594 (E.D. Cal. 2008) (no prejudice to defendants where applicants stipulated to protective orders under which defendants could conduct discovery).

## CONCLUSION

Use of a pseudonym is appropriate in this case to protect Plaintiff and her family. The sensitive and highly personal issues raised in Plaintiff's complaint are intensely private, and Plaintiff should not have to suffer a severe "invasion of privacy as the price

for litigating a legitimate private complaint." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112-13 (E.D.N.Y. 2003). Moreover, in today's modern era, the public can easily access court files via the Internet, and Plaintiff therefore faces a real risk of stigmatization and retaliation if her name is not kept confidential. *See id.*; *Patient v. Corbin*, 37 F. Supp. 2d 433, 433-34 (E.D. Va. 1998). Protecting the Plaintiff in this case promotes the public interest and will not have any adverse impact on Defendants. For all of the foregoing reasons, this Court should grant Plaintiff's Motion to Commence an Action and Proceed Under a Pseudonym and to Temporarily File this Motion and Her Complaint Under Seal.

November 27,2012

Respectfully submitted,

Joshua S. Devore
VA. Bar No. 45312
*Counsel for Plaintiff Jane Doe*
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone: 202-408-4600
Facsimile: 202-408-4699